IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRIAN S. MONTAGUE | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:20-cv-87-HSO-RHWR |
| | § | |
| CITY OF MOSS POINT, | § | |
| MISSISSIPPI; MARIO KING; | § | |
| and JOHN DOES 1-5 | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS CITY OF MOSS POINT, MISSISSIPPI, AND MARIO KING'S MOTION [93] FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF BRIAN S. MONTAGUE'S CLAIMS AGAINST DEFENDANTS CITY OF MOSS POINT, MISSISSIPPI, AND MARIO KING**

BEFORE THE COURT is Defendants City of Moss Point, Mississippi, and Mario King's Motion [93] for Summary Judgment. This Motion is fully briefed. After due consideration of the record, the parties' submissions, related pleadings, and relevant legal authority, the Court finds that Defendants City of Moss Point, Mississippi, and Mario King's Motion [93] for Summary Judgment should be granted, and that Plaintiff Brian S. Montague's claims against Defendants should be dismissed with prejudice.

## I. BACKGROUND

### A. Factual background

Plaintiff Brian S. Montague ("Plaintiff" or "Montague") is a resident of Jackson County, Mississippi, who was employed by the City of Moss Point, Mississippi (the "City"), from 1992 until 2019. Am. Compl. [68] at 1-2; Ex. 7 [96-7] at 2. Montague worked in "various capacities within the fire department,"

including as a battalion chief at the time of his retirement in December 2019. Am. Compl. [68] at 2; Ex. 3 [94-3] at 15-16. Montague is a white male over the age of 40. Am. Compl. [68] at 8.

Montague alleges that in July 2017, Mario King ("King") became Mayor of the City and that, after he took office, he engaged in a pattern of harassing older employees. Generally, Montague asserts that King: (1) forced or coerced other employees into making knowingly false and defamatory comments about other employees; (2) altered employees' performance evaluations in an effort to have them discharged; (3) sought to use his position to intimidate employees and to benefit himself, his family, and his friends; (4) misused City resources and punished those who reported him; (5) used his position to obtain benefits from private entities; (6) tried to eliminate positions in order to receive pay increases; (7) harassed employees until they were forced to leave their employment; and (8) retaliated against employees who filed charges with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 2-4.[1] Montague further asserts that the Board of Aldermen of the City of Moss Point ("Board") allowed King to operate without oversight. *Id.* at 4.

B.    Procedural history

On July 2, 2019, twelve individuals who were employees or residents of the City ("Plaintiffs") initiated an action in this Court against the City and King

---

[1] These assertions are the same as those contained in the Complaint [1], before this matter was severed into separate actions, and there is no indication that King directed these actions at Montague personally. *See* Compl. [1] at 4-6; Am. Compl. [68] at 2-4.

(collectively "Defendants"). Compl. [1]. Plaintiffs collectively advanced seven claims, including First Amendment, Second Amendment, Title VII, age discrimination, taxpayer, and state-law claims. *See id*. On September 17, 2019, Plaintiffs filed an Amended Complaint [18] adding an additional plaintiff, and Defendants filed a Motion for Severance [20], arguing that the Court should sever the claims of each Plaintiff into individual actions. Mot. [20]. The Court granted Defendants' Motion [20] on March 2, 2020, and Plaintiffs' claims were severed into twelve separate cases, in addition to the original parent suit. Order [67]. The Court ordered each Plaintiff to file an amended complaint in their individual cases "set[ting] forth factual allegations and claims specific to him or her." *Id*. at 22.

Montague filed his Amended Complaint [68] on May 1, 2020, advancing five causes action. Four were brought against both the City and King: (1) Second and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 (Count One); (2) First Amendment and equal protection violations pursuant to 42 U.S.C. § 1983 (Count Two); (3) Age Discrimination in Employment Act ("ADEA") and equal protection claims for age discrimination and retaliation pursuant to 42 U.S.C. § 1983 (Count Three); (4) Title VII and equal protection claims for race discrimination pursuant to 42 U.S.C. § 1983 (Count Four). *See* Am. Compl. [68] at 5-11. The Amended Complaint also asserted claims against Defendant King individually for intentional infliction of emotional distress, malicious interference with employment, and outrage (Count Five). *See id*. at 11-12.

Defendants filed a Motion [70] to Dismiss which sought dismissal of all of

Montague's claims pursuant to Federal Rule of Civil Procedure 41(b), and more specifically sought dismissal on the merits of Montague's Second and Fourteenth Amendment claims in Count One and his state-law claims in Count Five. Mot. [70]. The Court entered an Order [85] on February 26, 2021, granting Defendants' Motion in part and denying it in part. Order [85]. The Court dismissed Montague's Second and Fourteenth Amendment claims against the City and King in Count One, his state-law intentional infliction of emotional distress claim in Count Five, and all of his 42 U.S.C. § 1983 claims against King in his official capacity. *Id.* at 21. The Order [85] permitted Montague's claims under Counts Two, Three, and Four to proceed, as well as his claim in Count Five only as to his allegation that King intentionally interfered with his employment. *Id.*

Defendants have now filed the present Motion [93] for Summary Judgment seeking dismissal of all remaining claims against them. Mot. [93]. Montague has filed a Memorandum [96] in Opposition arguing that his claims against the City and King should not be dismissed. Montague does, however, concede his First Amendment claims against Defendants in Count Two, and the Court will therefore dismiss Montague's First Amendment claims. Mem. [96] at 11.

## II. <u>DISCUSSION</u>

### A. <u>Summary judgment standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the

4

nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In order to rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). Summary judgment is appropriate if the evidence is merely colorable or is not significantly probative. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views the facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.   Claims conceded by Plaintiff

Montague states that he does "not oppose . . . Defendants' Motion [93] for Summary Judgment" as to his First Amendment claims. Resp. [96] at 11. Because Montague has conceded his First Amendment claims, the Court will dismiss the First Amendment claims in Count Two. This leaves for resolution Montague's: (1) ADEA and § 1983 equal protection claims for age discrimination and retaliation in Count Three; (2) Title VII and § 1983 equal protection claims for race

discrimination in Count Four; and (3) his state-law claim for intentional

interference with employment in Count Five.

C.     Plaintiff's remaining claims

1.     Count Three – Age discrimination and retaliation under 42 U.S.C. § 1983 and
       the ADEA

a.     42 U.S.C. § 1983 claim

The Amended Complaint [68] advances an equal protection claim pursuant to

42 U.S.C. § 1983 for age discrimination and retaliation. Am. Compl. [68] at 8-10.

Montague asserts that the City and King discriminated against older employees by

making derogatory remarks about their age, requesting that they retire, calling out

employees' age-related ailments, reassigning them to positions for which they were

not qualified, and attempting to lower their salaries. *Id*. at 8-9. With respect to

Montague, he avers that King informed him in a telephone call that, if he accepted

the position of interim chief of the fire department, his pay would not increase, and

that during their discussion King was "yelling and being generally condescending

towards [him]." *Id*. at 9; Ex. 3 [96-3] at 1; Ex. 3 [94-3] at 21. King allegedly

suspended Montague for insubordination following this conversation. Am. Compl.

[68] at 10; Ex. 3 [96-3] at 1; Ex. 3 [94-3] at 22. Montague claims that King's "deceit

and misrepresentations" about the position were "retaliatory towards Plaintiff

because of [his] age . . . and the prior filing of a charge of discrimination made by

Plaintiff." Am. Compl. [68] at 10.

"Section 1983 does not create any substantive rights, but instead was

designed to provide a remedy for violations of statutory and constitutional rights."

*Lafleur v. Tex. Dept. of Health*, 126 F.3d 758, 759 (5th Cir. 1997). The Court

employs a two-step inquiry for determining whether a § 1983 remedy exists: "(1) if

the plaintiff asserts the violation of a federal right, then a § 1983 remedy exists

unless, (2) the defendant can show that Congress specifically foreclosed a remedy

under § 1983 by providing a comprehensive enforcement mechanism for protection

of a federal right." *Id.* (citing *Golden State Transit Corp. v. City of Los Angeles*, 493

U.S. 103, 110 (1989)); *see also Gazzo v. Miss. Dept. of Pub. Safety*, 1:09CV719-LG-

RHW, 2010 WL 382588, at *3 (S.D. Miss. Jan. 27, 2010) (applying this test). As to

the second step, Defendants argue that Montague's claims under Count Three are

preempted by the ADEA (29 U.S.C. § 621, *et seq.*). Mem. [94] at 9-10.

　　In *Lafleur*, the Fifth Circuit noted that "Congress has enacted a statutory

provision to confront age discrimination in the work place via the ADEA," and held

"that the ADEA is the sole remedy for persons who have been discriminated against

based on their age." *Lafleur*, 126 F.3d at 760. As such, the "[s]ubstantive rights

secured by the ADEA may not . . . be used as the basis for a § 1983 suit," *Jackson v.

St. Charles Parish Hous. Auth. Bd. of Comm'rs*, 441 F. Supp. 3d 341, 356 (E.D. La.

2020), because "§ 1983 age discrimination claim[s] [are] preempted by the ADEA,"

*Pechon v. La. Dept. of Health and Hospitals*, 386 F. App'x 606, 611 (5th Cir. 2010)

(alterations in original) (quoting *Lafleur*, 126 F.3d at 760). Accordingly, age

discrimination claims should be brought under the ADEA, unless the plaintiff

pleads facts that would independently support a § 1983 claim. *Lafleur*, 126 F.3d at

760; *see also Pequeno v. Univ. of Tex. at Brownsville*, 1:14-CV-093, 2015 WL

13649809, at *3 (S.D. Tex. July 29, 2015).

Montague counters that his § 1983 age discrimination claim is not preempted by the ADEA because he has set forth facts demonstrating that King harassed him and treated younger employees differently under the Fourteenth Amendment. Mem. [96] at 5-6. The facts as set forth in the Amended Complaint [68] do not support an independent claim under § 1983. Disparate treatment based upon one's age and retaliation that flows from the affected person engaging in a protected activity are expressly prohibited by the ADEA. *See* 29 U.S.C. § 623(a)(1-3), (d); *Kentucky Ret. Sys. v. E.E.O.C.*, 554 U.S. 135, 141 (2008); *Holtzclaw v. DSC Commc'ns Corp*, 255 F.3d 254, 260 (5th Cir. 2001) ("Retaliation claims are nothing more than a protection against discrimination in that the employee against whom the employer has retaliated suffers discrimination based on the employee's exercise of a right to charge, testify, assist, or participate in a protected activity under the ADEA."). Montague's allegations raise age discrimination claims that fall squarely within the purview of the ADEA, and as such his § 1983 claims in Count Three are preempted because his pleadings "only allege facts that show a claim for age discrimination." *Pequeno*, 2015 WL 13649809, at *3.[2] The § 1983 claims in Count Three will be dismissed.

b.   ADEA claim

Montague does not reference the ADEA in Count Three but alleges that this

---

[2] This Court has also recognized that, "the [e]qual [p]rotection [c]lause does not preclude workplace retaliation." *Robinson v. Jackson Pub. Sch. Dist.*, No. 3:08cv135-DPJ-FKB, 2011 WL 198127, at *5 (S.D. Miss. Jan. 20, 2011) (collecting cases). Montague's retaliation claim under 42 U.S.C. § 1983 fails for this reason as well.

Court has jurisdiction over his claims pursuant to the ADEA. Am. Compl. [68] at 2. To the extent the pleadings may be construed to raise an ADEA claim, the Court will address it.

The ADEA makes it unlawful "for an employer to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). For the protections of the ADEA to apply, the individual must be at least forty years of age, 29 U.S.C. § 631(a), and it is uncontroverted that Montague was at all relevant times over the age of forty, Ex. 3 [96-3] at 1; Answer [89] at 5.

(i)   Direct evidence of age discrimination

Age discrimination under the ADEA may be established through either direct or circumstantial evidence. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). "Direct evidence" must be "unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Workplace "remarks" may serve as direct evidence, but to prevent summary judgment they must be: (1) "age related;" (2) "proximate in time to the terminations;" (3) "made by an individual with authority over the employment decision at issue;" and (4) "related to the employment decision at issue." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (quoting *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir.1996)). Comments that fall short of this

9

standard are deemed "stay remarks" and considered insufficient to preclude summary judgment. *See E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015) ("[Remarks] defeat summary judgment-that is to serve as sufficient evidence that by itself would allow a jury to find discriminatory motive-only if they are not stray, but instead are tied to the adverse employment action at issue both in terms of when and by whom they were made.").

In his Response, Montague attributes several derogatory comments to King that he claims were age related. Resp. [96] at 3 (citing Ex. 1-4 [96]). The first is in an e-mail King sent to City staff on September 12, 2017, which included the following statement:

> [i]f you are in a place where you are no longer able to perform, you are getting angry, taking medication because of work, developed high blood pressure, or your job is a burden to you, it is time to make a tough decision.

Ex. 3 [96-3] at 1. Montague asserts that this "was a direct reference to age related ailments." *Id.*

Next, Montague cites several statements King allegedly made to Tommy Posey, former City fire department chief. Resp. [96] at 8. King told Posey that "you need to retire" because "you've been here too long," that "anybody over 40 was a dinosaur," and that Melvin Harris, who was a county supervisor and around 70 years old at the time, "ought to die." Ex. 6 [96-6] at 4-5. He also cites a statement that King made to Franklin Vance, a fire department employee, that "we're losing money with [older people] and they all need to be gone," Ex. 8 [96-8] at 3, and one

10

made to Shirley Joseph, a City employee, in which he described her as "old and dried up," Ex. 9 [96-9] at 4. Noticeably absent from Montague's response and in the summary judgment record is any evidence that King made any statements relating to Montague's age. *See generally* Resp. [96].

Montague specifically complains about two employment decisions: his suspension with pay[3] and his purported forced retirement. *Id*. at 10.[4] Montague was suspended on or about June 19, 2019, Ex. 3 [96-3] at 1, and he retired on December 1, 2019. Ex. 3 [94-3] at 16. Montague testified that King lacked the authority to suspend or terminate him. *Id*. at 18, 35-36; *see also* Ex. 10 [96-10] at 4 (King testifying that he does not have the authority to make hiring and firing decisions). Montague also testified that the only discriminatory comments that King made to him about age referenced a general preference for millennials. Ex. 3 [94-3] at 43.

Based on the summary judgment record, Montague has not shown age discrimination through direct evidence. King's statements are certainly age related, but they do not otherwise meet the test for direct evidence of age discrimination against Montague. Only one comment is dated, the September 17, 2017, e-mail, Ex. 3 [96-3] at 1, but it is too attenuated to serve as direct evidence of discrimination because it occurred nearly two years before the first action about which Montague complains, his suspension in 2019. *See Patel v. Midland Mem'l Hosp. and Med. Cntr.*, 298 F.3d 333, 344 (5th Cir. 2002) (recognizing comments made two years

---

[3] Montague testified that King's reason for suspending him was insubordination. Ex. 3 [94-3] at 45.
[4] Montague states in his Response that King's harassment forced him to resign. Resp. [96] at 4, 10. However, Montague testified, and has otherwise disclosed in written discovery, that he retired. Ex. 3 [93-3] at 16; Ex. 7 [96-7] at 2.

before the plaintiff was suspended as too remote). The other statements occurred sometime after King took office in 2016, but Montague has not shown that they were sufficiently close in time to his suspension or retirement in 2019 so as to constitute direct evidence of age discrimination. *See, e.g., Barfield v. Fed. Express Corp.*, 351 F. Supp. 3d 1041, 1052 (S.D. Tex. 2019) (holding that comments made "several months" before termination were insufficient).

Additionally, these derogatory comments were not uttered by someone with the authority to suspend or terminate Montague, nor did they relate to the specific actions he challenges. Montague's, as well as King's, testimony confirms that King lacked the authority to make the employment decisions at issue here. King's comments were thus "stray remarks" that do not carry Montague's burden at this stage. *See Goudeau*, 793 F.3d at 475.

(ii)    Circumstantial evidence of age discrimination

Alternatively, Montague may prove his ADEA disparate treatment claim by relying upon circumstantial evidence. The Fifth Circuit applies the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to disparate treatment claims based upon circumstantial evidence. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). To establish a prima facie case of age discrimination, the plaintiff must prove:

> (1) he was discharged [or suffered some adverse employment action by the employer]; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.

*Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid*, 376 F.3d at 309); *see also Offord v. City of Fulshear*, 861 F. App'x 536, 541 (5th Cir. 2021). If the plaintiff meets this burden an inference of discrimination arises that the defendant may rebut by offering a legitimate, non-discriminatory reason for its decision. *Offord*, 861 F. App'x at 541. If the defendant provides such a reason, the plaintiff then has the burden to prove that the defendant's stated reason is a pretext for discrimination. *Id*.

Defendants first argue that any claim against King under the ADEA should be dismissed. Mem. [94] at 18-19. The Fifth Circuit has held "that the ADEA provides no basis for individual liability for supervisory employees." *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996); *see also Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, 709 F. App'x 243, 247 (5th Cir. 2017) (same). Only employers may be held liable under the ADEA. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001). Therefore, summary judgment on Montague's ADEA claims against King individually is appropriate.

Defendants next assert that Montague's ADEA claims against the City should be dismissed because he cannot establish a prima facie case of age discrimination. Mem. [94] at 12-13. In support, the City cites Montague's testimony that neither the City nor King ever took any negative action against him based on his age, and that he was not aware of any instances where the City or King treated younger employees more favorably than him. *Id*. (citing Ex. 3 [94-3] at 44).

Montague counters that the summary judgment evidence indeed shows that

King treated younger employees more favorably than him. Resp. [96] at 10. He contends that King did not "mistreat younger employees" and even allowed them "to watch TV at work, work from home, get additional training when needed, and miss work." *Id.* at 5. Montague claims that older employees, including himself, were moved from their offices, yelled at by King, had their job responsibilities altered, and threatened with lower pay or losing their job. *Id.*; *see* Ex. 2 [96-2] at 3. Personally, Montague claims that King suspended him, attempted to promote a "younger, non-white employee instead" of him, and ultimately forced his resignation, which Montague asserts constituted a constructive discharge. Resp. [96] at 10.

Even assuming Montague can establish the remaining elements of an ADEA claim, he cannot show that he was discharged or suffered some other adverse employment action.[5] Montague does not claim that he was fired, but instead argues that he was constructively discharged. *Id.* In this context, the Fifth Circuit has recognized that an employee who resigns or retires "may satisfy the discharge requirement by proving constructive discharge." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (citation omitted). Constructive discharge occurs when an "employer deliberately makes an employee's working conditions so intolerable that

---

[5] Under this element, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (quotation omitted); *see also Mitchell v. Snow*, 326 F. App'x 852, 854-855 (5th Cir. 2009) (applying this standard in an ADEA case). A suspension with pay is not an ultimate employment decision and does not satisfy the adverse employment action element. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331-32 (5th Cir. 2009); *Brooks v. Houston Ind. Sch. Dist.*, 86 F. Supp. 3d 577, 589 (S.D. Tex. 2015). As such, Montague's suspension with pay is insufficient to satisfy this element.

14

the employee is forced into an involuntary resignation." *Peterson v. City of Dallas*,
135 F. App'x 635, 638 (5th Cir. 2005) (quoting *Jurgens v. E.E.O.C.*, 903 F.2d 386,
390 (5th Cir. 1990)). In making this determination, courts consider whether the
plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job
> responsibilities; (4) reassignment to menial or degrading work; (5)
> reassignment to work under a younger supervisor; (6) badgering,
> harassment, or humiliation by the employer calculated to encourage
> the employee's resignation; or (7) offers of early retirement or
> continued employment on terms less favorable than the employee's
> former status.

*Brown*, 207 F.3d at 782 (quoting *Barrow v. New Orleans Steamship, Ass'n*, 10 F.3d
292, 297 (5th Cir. 1994)). This test is objective, meaning that the employee's
"resignation must have been reasonable under all the circumstances." *Tyler*, 304
F.3d at 394 (quoting *Barrow*, 10 F.3d at 297).

Neither party addressed these factors in their briefs, but the summary
judgment record establishes that Montague (1) was not demoted, (2) did not receive
a salary reduction, (3) did not have his job responsibilities reduced, (4) was not
reassigned to menial work or (5) to a supervisor younger than him, and (7) was not
offered early retirement. Montague's only possible argument with respect to the
first three factors is that King played a role[6] in Montague not accepting the interim
fire chief position even though he was nominated twice. Ex. 3 [94-3] at 19-22, 55.

---

[6] Montague testified that when he was first nominated for the interim chief position, King informed
him that his pay would not increase if he took the job. Ex. 3 [93-3] at 19-22. Montague explained that
this was a factor in his decision to turn the position down. *Id*. The second time Montague was
nominated for this role, he testified that King offered him a raise to take the position, but
conditioned the offer on Montague no longer working at the regional airport when he was not
working for the fire department. *Id*. at 54-55.

However, Montague cannot claim that he suffered a demotion for a position that he never accepted, nor can he claim that his salary was reduced or that his job responsibilities were reduced since he never accepted the job. As to factors four, five and seven, Montague has not presented evidence that he was reassigned at any point, and he testified that he voluntarily retired. *Id.* at 16. As such, none of these "aggravating factors" support a claim that Montague was constructively discharged. *See McCann v. Litton Systems, Inc.*, 986 F.2d 946, 951 (5th Cir. 1993).

As to the sixth factor, Montague asserts in his Response "that he resigned because of [King's] harassment and the suspension by [King]." Resp. [96] at 10. Harassment sufficient to constitute a constructive discharge must be greater than that required for a hostile work environment claim. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citation omitted). To prove a hostile work environment, the plaintiff must establish that the harassment "affected a term, condition, or privilege of employment." *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020). "[T]he harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th

16

Cir. 2005) (citation omitted).

With respect to his suspension, Montague testified that it arose from a phone call with King following his nomination by the Board for the interim chief position. Ex. 3 [94-3] at 19, 21. Montague testified that during this call King demanded an answer on whether he would accept this position and that "[King] started berating" him, so he hung up the phone. *Id.* at 21. King attempted to call Montague back, but he did not answer. *Id.* Montague testified that following this call he was suspended with pay. *Id.*; Ex. 3 [96-3] at 1-2.

Montague maintains that King "wanted [him] gone from the fire department and replaced by a younger . . . employee." Resp. [96] at 11. Montague clarified in his deposition testimony that this younger employee[7] was Frank Munoz ("Munoz"), a fire department captain. Ex. 3 [94-3] at 38. However, other than identifying Munoz as the person he is referring to in his allegations, Montague has not presented any competent summary judgment evidence that he was suspended because King preferred Munoz for the interim fire department chief position, and according to Montague's own testimony, at no point in their conversations following Montague's nomination did King reference age. *Id.* at 19, 21. Moreover, Montague testified that King's stated reason for suspending him was insubordination. *Id.* at 45. The only evidence to the contrary is Montague's conclusory statement in his declaration that

---

[7] Montague testified that he believed Munoz was older than him, Ex. 3 [93-3] at 38, but stated in his declaration that he is younger than him, Ex. 3 [96-3] at 2. In viewing the evidence in the light most favorable to the plaintiff, the Court concludes that for the purposes of this Motion that Munoz is younger than Montague. Even so, this fact does not alter the Court's decision.

King preferred Munoz for the job. Ex. 3 [96-3] at 1-2. At this stage, "a vague or conclusory" declaration is inadequate to sustain a plaintiff's burden "in the face of conflicting probative evidence." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (citing *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002)).

Additionally, Montague was asked directly if King had ever made "any comment to you that made you think he was discriminating against you because of your age," to which his sworn response was "[m]ore so the race than the age. I can't . . . specifically, (sic) where he approached me about that. It was just his general tone and conversation." Ex. 3 [94-3] at 43. Montague was also asked whether any decision made by King or the Board "was made *because of his age*," to which Montague responded "I can't say that." *Id.* at 43-44 (emphasis added). He also acknowledged that King had never shown preferential treatment to a fire department employee younger than him. *Id.* at 40.

Based on the summary judgment record, the Court finds that Montague's allegation that King wanted him replaced by a younger employee is conclusory and thus insufficient to preclude summary judgment. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient . . . to defeat a motion for summary judgment.") (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)).

As to the harassment allegation, Montague cites King's discriminatory

comments to show that King harassed him because of his age. Resp. [96] at 8. However, King's age-related comments are insufficient to show that Montague was constructively discharged because they were neither sufficiently severe nor pervasive to effect Montague's employment. As to the e-mail allegedly sent by King, at most this was a "mere utterance of an . . . epithet which engender[ed] offensive feelings" which is insufficient to alter the terms of employment. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). The e-mail indirectly referenced age by listing age-related ailments, Ex. 3 [96-3] at 1, which may have offended Montague, but it did not affect a term, condition, or privilege of his employment.

With respect to King's derogatory comments to Posey, Vance, and Joseph, there is no competent summary judgment evidence showing that these comments unreasonably interfered with Montague's work performance. *See Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 258 (5th Cir. 2011) ("Actionable harassment 'will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.'") (quoting *Harris*, 510 U.S. at 22)). After King made these comments, Montague was twice offered the interim chief job and twice turned it down. Ex. 3 [94-3] at 54-55. He also remained with the fire department until December 2019 and worked at a level sufficient to warrant a promotion. *Id*. at 16, 54-55.

In sum, no reasonable juror could conclude that Montague's working conditions were so intolerable that a reasonable person would feel compelled to

19

resign. Because Montague has not demonstrated that he suffered an adverse employment action, he has not made a prima facie case of age discrimination. The City is entitled to summary judgment on Montague's ADEA claim.[8]

3.    <u>Count Four – Race discrimination under 42 U.S.C. § 1983 and Title VII</u>

a.    <u>Relevant standards</u>

Montague alleges that the City and King discriminated against him because of his race in violation of 42 U.S.C. § 1983 and Title VII. Am. Compl. [68] at 10-11. Montague's race discrimination claims under § 1983 and Title VII constitute "parallel causes of action." *Lauderdale v. Tex. Dept. of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Cervantez v. Bexar Cnty. Civil Serv. Comm'n,* 99 F.3d 730, 734 (5th Cir. 1996)). In cases such as this one, where the same set of facts support both the § 1983 and Title VII claims, a court evaluates both under the standard governing Title VII actions. *See Irby v. Sullivan*, 737 F.2d 1418, 1431 (5th Cir. 1984); *Monteverde v. New Orleans Fire Dept.*, 124 F. App'x 900, 904 (5th Cir. 2005).

Under Title VII, a plaintiff may prove racial discrimination through direct or

---

[8] For the same reasons, Montague's ADEA retaliation claim fails. "To state a prima facie retaliation claim under the ADEA, a plaintiff must show: '(1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action.'" *Heggemeir v. Caldwell Cnty.*, 826 F.3d 861, 869 (5th Cir. 2016) (quoting *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)). Because Montague has not shown that he suffered an adverse employment action, even under the lower standard employed in the retaliation context, he has not made a prima facie case of retaliation under the ADEA. *See Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009) (recognizing that an adverse employment action in the retaliation context must be "materially adverse," meaning "one that would dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.") (alterations in original) (quoting *Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). The City is entitled to summary judgment on Montague's ADEA retaliation claim.

circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "The presentation of credible direct evidence that discrimination motivated or was a substantial factor in the adverse employment action shifts the burden to the employer to show that, regardless of discrimination, the same decision would have been made." *Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008). Just as in the age discrimination context, a remark must meet a similar four-factor test to constitute direct evidence of racial discrimination. *Id.* (citing *Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 405 (5th Cir. 2001)). The statement must be "(1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." *Id.*

Where a plaintiff relies on circumstantial evidence to demonstrate race discrimination, he must establish a prima facie case by proving that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Stroy v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to set forth some legitimate, non-discriminatory reason for its decision. *Id.* If the defendant provides such a reason, the plaintiff then has the burden to prove that

the defendant's stated reason is a pretext for a discriminatory purpose. *Id.*

b.   <u>Parties' arguments</u>

Turning first to Montague's Title VII claims against King, the Fifth Circuit has held that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)). Montague's Title VII claims against King should be dismissed for this reason. However, Montague may maintain a claim for race discrimination against King individually under § 1983. *See, e.g., Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004).

The City and King contend that Montague has not shown by either direct or circumstantial evidence that he was discriminated against because of his race. Defendants represent that the only direct evidence Montague has offered is "that he is white and that Defendant King has accused him of being a racist," which they argue is insufficient. Mem. [94] at 14. Defendants further maintain that Montague has not demonstrated a prima facie case of race discrimination because he has not shown that he suffered an adverse employment action or that he was treated differently than his similarly situated coworkers.

Montague responds that it is "evident" that King wanted to remove him from the fire department and replace him with a non-white employee. Resp. [96] at 11. Montague contends that King suspended him after he was nominated for the interim fire department chief position because he preferred Munoz, a non-white

employee, for the position. *Id*. To support this contention, Montague points to King's praise of "black fireman [sic] when they were promoted" because of their race. *Id*. (citing Ex. 1 [96-1]). Montague also claims that King referred to him as "culturally incompetent," stated that the fire department culture needed to be changed, threatened to make culture training mandatory, attempted to harass him by using images of Colin Kaepernick in presentations, prevented him from presenting an award, and accused him of posting a rebel flag on Facebook. Ex. 3 [96-3] at 2.

c.    Analysis

The Court finds that Montague cannot support a claim for race discrimination through either direct or circumstantial evidence because he cannot show that he suffered an adverse employment action. In this context, adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559. Montague's allegation that he was suspended with pay by King, whether with or without good cause, is not an adverse employment action. The Fifth Circuit has held that a temporary suspension with pay, followed by reinstatement and no loss of benefits, does not constitute an adverse employment action. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331-32 (5th Cir. 2009); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000). Montague's uncontroverted testimony was that he was suspended by King, with pay, for two days and that he returned to work following the suspension. Ex. 3 [94-3] at 35. With respect to the effect of his suspension, Montague testified that only his reputation was damaged. *Id*. at 35, 53.

As such, this suspension falls short of the ultimate employment decision necessary to constitute an adverse employment action.

A constructive discharge can serve as an ultimate employment decision that satisfies this element of a prima facie case. *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) ("[C]onstructive discharge is an adverse employment action."). However, similar to his age discrimination claim, Montague cannot establish that he was constructively discharged because he cannot create a triable fact issue on whether the conduct he complains of was sufficiently severe or pervasive to constitute a hostile work environment. This is because a constructive discharge claim "requires a greater degree of harassment than that required by a hostile environment claim." *Brown*, 237 F.3d at 566 (citation omitted).

Several of the incidents about which Montague complains are not evidence of racial discrimination and cannot be considered in assessing whether the terms, conditions, or privileges of his employment were altered. As the Fifth Circuit has explained, "[h]arassing someone because he is a racist . . . is not the same as harassing someone because of his race. Race is a physical characteristic, whereas racism is a prejudicial belief about someone because of his race." *Byrnes v. City of Hattiesburg*, 662 F. App'x 288, 291 (5th Cir. 2016). King's comment that Montague was "culturally incompetent," that the fire department needed cultural change, that he would make cultural training mandatory, and his accusation that Montague posted the rebel flag on Facebook fall into this latter category. *See* Ex. 3 [96-3] at 2. If anything, each is evidence that King harassed Montague because he believed he

24

was a racist, not because of his race. *See* Ex. 3 [94-3] at 60 ("[King] accused me . . . of being a racist."); Ex. 1 [96-1] at 1 (another fire department employee claiming that King "told us that [he] thought we were racist."). Consequently, these are not sufficient to constitute evidence of a hostile work environment based on race. *Ramsey v. Henderson*, 286 F.3d 264, 270 (5th Cir. 2002) (recognizing that conduct that does not involve racial discrimination "cannot be the basis of a Title VII claim").

The same is true for Montague's suspension. Montague testified that King suspended him because did not want him to take the interim chief job. Ex. 3 [94-3] at 45. Specifically, Montague claims that King had "a problem with whites" and called him "culturally incompetent." *Id*. He further states that "[s]o, obviously that is a racial connotation towards me," *id*., and maintains that King wanted Munoz, a non-white fire department employee, to take the interim chief position, Ex. 3 [96-3] at 1.[9]

There is no evidence in the summary judgment record outside of Montague's subjective belief and self-serving statements to support his assertions, and the Fifth Circuit has warned that "'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269 (quoting *Douglass v. United Servs.*

---

[9] It is uncontroverted that King did not have the authority appoint the interim fire department chief and that it was the Board that made this decision. Ex. 3 [93-3] at 19, 53-54; Ex. 1 [96-1] at 1; Ex. 10 [96-10] at 4. It was the Board that nominated Munoz for this position initially before withdrawing his nomination and offering the job to Montague again. Ex. 3 [93-3] at 54. As such, even if Montague's testimony that King preferred Munoz for the job were true, King lacked the authority to hire Munoz for the position. Ex. 10 [96-10] at 4.

*Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)). Montague's self-serving assertions and subjective belief that King suspended him because of his race are insufficient to create a triable issue of fact. *See Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) (holding that the plaintiff's self-serving statements about her performance did not create an issue of fact on whether she was fired because of her age); *E.E.O.C. v. La Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("We have consistently held that an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief.") (citations omitted).

With respect to his evidence that could be considered racial harassment, Montague cannot establish that any of these incidents were frequent or pervasive. Montague has presented evidence that King praised two employees because of their race when they were promoted within the fire department, that King showed an image of an African American civil rights leader in a presentation once, and that on one occasion King chose a non-white employee instead of him to present an award. Ex. 1 [96-1] at 3; Ex 3 [96-3] at 2. These incidents do not meet the high threshold for demonstrating severe harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[The Supreme Court has] made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."). Nothing about King's praise of non-white fire department employees, his presentation, or his decision to allow Munoz to present the award rather than Montague rise to the level necessary to indicate extreme conduct.

King's conduct also did not physically threaten Montague. Montague did

testify that the incident where King asked Munoz to present an award for which he was listed as the presenter was embarrassing, Ex. 3 [94-3] at 49-50, but this alone is insufficient to demonstrate a hostile work environment, *see, e.g., Ramsey*, 286 F.3d at 266, 269-70 (holding that an employee who felt "belittled and humiliated" by her supervisor yelling at her had not shown a hostile work environment). Finally, King's actions did not detract from Montague's job performance, discourage him from remaining on the job, or keep him from advancing in his career. *See Barkley*, 433 F. App'x at 258. Montague remained in his position as battalion chief until he retired in December 2019, and during the relevant time period he twice declined a promotion. Ex. 3 [94-3] at 16, 53-54. Based on the totality of the circumstances and after considering each of the pertinent factors, the Court finds that Montague has not created a triable issue of fact that he was subjected to racial harassment that affected a term, condition, or privilege of his employment.

In sum, because Montague cannot show that he suffered an adverse employment action, he is unable to support a claim for race discrimination. Defendants are entitled to summary judgment on Montague's race discrimination claims under 42 U.S.C. § 1983 and Title VII.

4.   Count Five – Intentional interference with employment

Finally, Montague alleges that King maliciously interfered with his employment. Am. Compl. [68] at 11-12. Under Mississippi law, malicious interference with an employment contract can form the basis of a claim for tortious interference with an employment relationship. *Levens v. Campbell*, 733 So. 2d 753,

760-61 (Miss. 1999). The elements of tortious interference with employment are the same as those for tortious interference with contract. *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001) (listing the elements of tortious interference with employment) (citing *Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen of City of McComb*, 760 So. 2d 715, 719 (Miss. 2000)); *see also Morrison v. Miss. Enter. for Tech., Inc.*, 798 So. 2d 567, 574 (Miss. Ct. App. 2001). These elements are: (1) defendant acted intentionally and willfully; (2) defendant's actions were calculated to cause damage to the plaintiff in her lawful business; (3) defendant's actions "were done with an unlawful purpose of causing damage and loss, without right or justifiable cause on the part of defendant (which constitutes malice);" and (4) actual damage and loss resulted. *Hollywood Cemetery Ass'n*, 760 So. 2d at 719. Ordinarily, the tort of interference with contract is limited to situations in which "a wrongdoer . . . cause[s] another to breach a contract which he or she has with some third person." *Cenac v. Murry*, 609 So. 2d 1257, 1268 (Miss. 1992).

"[O]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985); *see also* Restatement (Second) of Torts § 770 cmt. b ("The responsibility may exist in such relationships as those of . . . employer and employee."). This "privilege" is "merely a specific example of having 'right or justifiable cause' to interfere with [a] relationship" as contemplated by the

elements of the tort; meaning, if the actor is occupying a position of responsibility on behalf of another, he or she has a right to act in good faith without incurring liability. *Morrison*, 798 So. 2d at 575. Therefore, if a plaintiff can show that the defendant acted in bad faith, the "privilege" is inapplicable. *Id*.

King argues that this claim should be dismissed because he was privileged to interfere with Montague's employment contract and because Montague did not suffer any actual injury as a result of any such interference. Mem. [96] at 17-18.[10] King contends that he was justified in suspending Montague because of his insubordination, and that Montague did not suffer financially from his suspension, because it was with pay. *Id*. at 17. Montague did not address this claim in his Response [96] in Opposition and has therefore abandoned it. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mutual Ins. Co.*, 22 F. 4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").

Even if Montague had not abandoned this claim, the Court finds that it cannot survive summary judgment. An essential element of an intentional interference claim "is that the plaintiff suffer some damage or loss." *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 304 F. Supp. 3d 514, 523 (N.D. Miss. 2018). In the context of intentional inference claims, the Mississippi Supreme Court

---

[10] King also argues that Montague's malicious interference claim is not properly before the Court because he failed to exhaust his administrative remedies, as set forth in Miss. Code Ann. § 21-31-23, prior to asserting this claim. Mem. [46] at 18. Because the Court finds that Montague abandoned this claim and that it is alternatively subject to dismissal on the merits, it need not address this procedural argument.

has likened "actual" damages to "compensatory" damages. *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 17 (Miss. 2007). It has further explained that "[w]hile evidence of damages in such situations need not be presented with absolute precision, it is incumbent upon the plaintiff to offer some proof that would bear on the question of the extent of his damage in order for the jury to intelligently deliberate on the question." *McFadden v. U.S. Fidelity and Guar. Co.*, 766 So. 2d 20, 23 (Miss. 2000).

In its Order [85] addressing Defendants' earlier Motion [70] to Dismiss, the Court found that Montague had stated a claim for intentional interference with his employment based in part on his allegations that "he incurred lost income as a result of his suspension." Order [85] at 19. Now, at the summary judgment stage, the undisputed evidence reveals that Montague was suspended by King "with pay" for two days. Ex. 3 [94-3] at 35. It is also undisputed that Montague returned to work following his suspension and continued working until he retired on December 1, 2019. *Id*. at 16, 35.

Montague did testify that the "suspension damaged his reputation," but he has presented insufficient evidence from which a jury could determine the extent of his reputational damages. Ex. 3 [94-3] at 53. Montague's burden at this stage is not to present an "exact dollar value," *Biglane*, 949 So. 2d at 17, but he must present "some proof" as to the extent of his damages to satisfy this element, *McFadden*, 766 So. 2d at 23. Montague's only evidence which could even possibly be construed as pertaining to the degree of his injury is his testimony that "[t]he suspension, even in

[the Board's] eyes, you know, that could have put some doubt in their minds about my ability to do the job." Ex. 3 [94-3] at 53. Montague's speculation that his suspension could have affected his reputation with the Board will not prevent summary judgment. *Likens v. Hartford Life & Accident Ins. Co.,* 688 F.3d 197, 202 (5th Cir. 2012); *see also Campbell v. Novartis Pharm. Co.*, 2:18-CV-116-KS-MTP, 2020 WL 3452240, at *4 (S.D. Miss. Mar. 30, 2020) (finding that speculations about plaintiff's reputational injury were insufficient evidence of actual loss). Moreover, Montague testified that the Board never took any "negative" action against him because of his suspension, other than failing to rule on it. Ex. 3 [94-3] at 63.

Based on the summary judgment record, the Court finds that Montague has not created a material issue of fact as to whether he suffered "actual damage or loss" as a result of King's actions. Montague's intentional interference claim survived the motion to dismiss stage based in part on his allegation that he suffered financially from his suspension. Order [86] at 19 (citing Am. Compl. [68] at 12). The uncontroverted summary judgment evidence at this stage establishes that Montague did not lose any income during his suspension and only suffered some speculative damage, if any, to his reputation. Ex. 3 [94-3] at 35. Montague was required at this stage to point to specific facts demonstrating that he suffered some damage or loss as a consequence of King's actions. *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (recognizing that the nonmoving party has the burden of presenting specific facts which demonstrate that a genuine issue for trial). Because he has not carried this burden, King is entitled to summary

judgment on Montague's intentional interference with employment claim.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants City of Moss Point, Mississippi, and Mario King's Motion [93] for Summary Judgment is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Brian S. Montague's claims against Defendants City of Moss Point, Mississippi, and Mario King are **DISMISSED WITH PREJUDICE**.  A separate Final Judgment will issue in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 8th day of March, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE